IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 13 |
| | ) | |
| Tyrome Gibson, | ) | |
| | ) | Judge Carol A. Doyle |
| Debtor. | ) | |
| | ) | Case No. 16 B 25231 |

**MEMORANDUM OPINION**

     Tyrome Gibson seeks confirmation of his chapter 13 plan. The chapter 13 trustee objects because the plan does not require the debtor to pay to the trustee any future income tax "refunds" he receives as additional plan payments. The trustee's objection is overruled. The debtor prorated the expected income from his tax "refund" over 12 months and properly calculated his plan payment. He is not required to pay future income tax "refunds" to the trustee. His plan will be confirmed.

I.    Background

     The issue in this case is how to treat the debtor's expected tax "refund." He will receive the "refund" in part because of tax credits available to low-income workers. The debtor claims his grandson as a dependent and receives a child tax credit and earned income tax credit after he files his tax returns. The debtor pays half of his "refund" every year to the mother of his grandson for the grandson's support. The debtor prorated his one-half share of his expected tax "refund" for 2016 – dividing it by 12 and adding that amount to his monthly income in Schedule I and his "current monthly income" ("CMI"). He then deducted the expenses he incurs to support himself and his dependents, leaving $525 for his plan payment. Under his proposed

plan, he will pay the trustee $525 per month for 36 months.

Marilyn Marshall, the chapter 13 trustee, objects to this plan. She contends that the debtor must pay all tax "refunds" he receives during the course of the plan to her as additional plan payments. She argues that the debtor may not prorate his income from his tax "refund" but must pay the entire amount to her in a lump sum after he receives it each year. She also objects to the debtor's payment of half of his tax "refund" to the mother of his grandson for the grandson's support.

None of the trustee's objections has merit. The debtor has calculated his plan payment exactly as required by § 1325(b) of the Bankruptcy Code, 11 U.S.C. § 1325(b), so he need not pay future tax "refunds" to the trustee. He may also pay half of his tax "refund" to the mother of his grandson for the expenses reasonably necessary to support him.

II.    <u>Findings of Fact</u>

The relevant facts appeared to be uncontested as the court was preparing to rule on the trustee's objections. The trustee nonetheless demanded an evidentiary hearing on two issues: (1) the amount of the debtor's expected tax "refund," and (2) the validity of the debtor's contention that he pays half of his tax "refund" each year to the mother of his grandson for support of the child. The court held an evidentiary hearing in February 2017, at which both issues were virtually uncontested. The debtor presented the evidence previously disclosed to the trustee, and she raised no serious challenge to any of it.

The debtor was a thoroughly credible witness. The debtor's attorney prepared the debtor's tax return for the 2016 tax year, which was admitted into evidence. The debtor will

receive a $2,389 "refund" based on the child tax credit, earned income credit,[1] and overwithholding by his employer. Thus, the so-called "refund" does not represent only tax payments that the debtor's employer had previously withheld.

The debtor's grandson lives with the debtor for nine months of the year while the grandson attends school. During the summer months, he lives with his mother. The debtor testified that he and the mother agreed that he will (1) claim the child as a dependent on his tax returns and receive appropriate tax credits, and (2) pay her half of any tax "refund" he receives to support the child during the summer months. The mother's affidavit, admitted into evidence without objection, corroborated the debtor's testimony about their agreement. The mother will receive approximately $1,200 of the debtor's expected "refund" for 2016.

Based on the uncontested evidence presented at trial, the court finds that the debtor will receive approximately $1,200 in additional income for 2016 after he files his tax return. The court also finds that the debtor pays half of his tax "refund" each year for expenses that are reasonably necessary to support his grandson during the summer months.

III.    Calculating the Debtor's Plan Payment

In *In re Morales*, __ B.R. __, 2017 WL 765727 (Bankr. N.D. Ill. Feb. 27, 2017), the court recently addressed the calculation of plan payments under § 1325(b) and related tax refund issues. The full analysis will not be repeated here. The following is a summary.

---

[1] Earned income credit and child tax credit payments are available to low-income workers to help support their families. *See, e.g., In re Hardy*, 737 F.3d 1189, 1196 (8th Cir. 2015); S. Rep. No. 94-36, reprinted in 1975 U.S.C.C.A.N. 54, 64 (stating that the earned income credit was intended to provide assistance "to taxpayers with dependent children - those who are most in need of the relief.").

3

Under § 1325(b), if the trustee objects, a debtor's plan cannot be confirmed unless the debtor devotes all of his "projected disposable income" to the plan. "Disposable income" is "current monthly income" (CMI) minus reasonably necessary expenses. CMI is the average of the debtor's gross monthly income for the six months preceding the petition date. CMI includes all income (with a few exceptions not relevant here), whether received weekly, monthly, annually, or on an irregular basis. Income received from tax credits must be included in CMI. If income is not received on a monthly basis, the debtor must determine the amount received annually, divide that number by twelve, and disclose the resulting figure as monthly income on Schedule I. The debtor must also include this amount in his CMI.

Once CMI is calculated, § 1325(b)(2) permits the debtor to deduct from it the expenses reasonably necessary for the support of himself and his dependents. As with his income, the debtor should prorate his annual or irregular expenses into monthly amounts. He may subtract his expenses from *all* the income he receives, including income received annually through tax credits or income tax refunds. The amount left after the debtor deducts his reasonable expenses from his CMI is his "projected disposable income" – the amount he must pay to creditors under his plan. If the debtor calculates his CMI and reasonably necessary expenses correctly, he need not pay any tax refunds to the trustee during the course of the plan.

In this case the debtor properly calculated his CMI. He prorated his expected $1,200 in additional annual income by adding $100 to his monthly income in Schedule I and his CMI calculation. He then deducted reasonably necessary expenses, leaving a plan payment of $525 per month.

IV.     Trustee's Objections

The trustee raises four objections to the debtor's plan. First, she argues that the debtor may not prorate his annual tax "refund," and that the extra $100 per month in income he lists in Schedule I is "illusory." Second, the trustee contends that prorating the income makes the plan unfeasible because the debtor will not have sufficient cash flow to make the plan payments. Third, she asserts that the debtor's disclosure of expected income from tax "refunds" is not accurate. She contends that it is not possible to accurately predict the amount of future refunds so he must simply pay them all into the plan. Fourth, she objects to the debtor's support payments to his grandson's mother.

None of these objections is valid.

A.     "Illusory" Income

First, the trustee is wrong in contending that the debtor's inclusion of $100 in prorated income from his expected tax "refund" in Schedule I and in his CMI is "illusory" because he will not receive it every month. The trustee herself contends that the debtor's income tax "refund" *must* be included in CMI because the definition of CMI does not exclude income from tax credits. As explained in *Morales,* Schedule I and the instructions for completing the bankruptcy forms *require* a debtor to prorate all income not received monthly. The instructions give examples of how to add up the non-monthly income to produce an annual amount, divide that number by 12, and add the result to the debtor's monthly income in Schedule I.

The debtor here has done what Schedule I, the instructions, and § 1325(b) require by adding $100 to his monthly income to reflect his annual tax refund. The debtor disclosed $100 in monthly income on Line 8h of Schedule I as "Expected Tax Refund." He could have simply

5

increased his total monthly gross income in Line 2 of Schedule I by $100. Disclosing the income in Line 8h is also acceptable, though, and makes it easy for the trustee and creditors to see the source of the funds.[2] He has included the expected income in his CMI and has therefore complied with § 1325(b).

The trustee's objection– that the prorated income is "illusory" – is not only meritless, it is self-contradictory. The trustee contends that the debtor must include the tax refunds and tax credits in his CMI, but she objects when he does just that by including the income in Schedule I and his CMI. The trustee's real objection seems to be that including the prorated amount in the debtor's monthly income allows him to deduct his expenses from this additional income. By insisting that debtors pay their entire tax refunds as additional plan payments, she seeks to prevent them from deducting any expenses from that income. As *Morales* explains, however, the trustee's position is directly contrary to the language of § 1325(b), which permits the debtor to deduct his reasonable expenses from all CMI, not just CMI actually received on a monthly basis. The debtor has complied with § 1325(b) by prorating his expected tax "refund." He need not pay any tax "refunds" to the trustee as additional plan payments.

---

[2]*Morales* explains that a debtor can also deal with expected future tax refunds by deducting the correct tax expense from CMI. If the debtor gets a refund as a result of overwithholding, the tax expense he deducts from his CMI should be less than the amount his employer withholds from his pay. In cases like *Morales*, however, where the tax "refund" arises solely from tax credits paid to low-income workers, the debtor cannot account for income from tax credits by adjusting the tax expense. Instead, he must prorate the income. In a case like this, in which the refund is based on both tax credits and overwithholding, the debtor may account for the additional income either by increasing the income included in CMI or decreasing the tax expense. He can arrive at the correct plan payment through either method if he properly adjusts the plan payment to reflect the additional income.

B.   Feasibililty

The trustee's next argument, that prorating the tax "refund" makes the plan unfeasible, is equally unpersuasive. The debtor is free to adjust the timing of payment for expenses so that he can make his plan payments on time, and he has in fact made his plan payments on time. His counsel has already prepared his tax return for 2016 and has most likely filed it by now. The debtor should receive his "refund" soon and can use it as needed to cover expenses and make plan payments throughout the year. Prorating his expected tax "refund" does not make the debtor's plan unfeasible.

C.   "Projected" Refunds

The trustee's challenge to the debtor's estimate of his tax "refund" has no merit, either. The debtor had previously scheduled different amounts for his projected income from expected tax "refunds," but by the time of the evidentiary hearing this problem was resolved. His amended Schedule I discloses $1,200 in prorated annual income from the tax "refund." Taken directly from his 2016 tax return, this number reflects his actual tax liability for the year preceding confirmation.

The trustee complains that the amount of the debtor's tax "refund" varied significantly in the past three years. He received $2,600 in 2014 and $4,500 in 2015. She contends that his current estimate of a $2,400 "refund" (with half paid to the grandson's mother) is "inaccurate." These fluctuations, she says, make it impossible to predict the amount of the debtor's future tax "refunds." In her view, the only way to ensure that all possible disposable income available in the future is paid to creditors is to require him to pay all future tax "refunds" to the trustee.

The trustee's position is based on the faulty premise that § 1325(b) requires a debtor to

7

pay all possible future disposable income to the trustee. It requires no such thing. Instead, as the Court held in *Hamilton v. Lanning,* 560 U.S. 505, 519 (2010), the debtor must calculate his play payment based on income in the past 6 months (or in the case of annual income, the past 12 months) and current expenses. These amounts are used to calculate projected disposable income unless changes are "virtually certain" to occur. *Id*. If there are significant unexpected changes in income or expenses after confirmation, § 1329 permits parties to seek modification of the plan. Under *Lanning*, the debtor's most recent income – for 2016 – is the best estimate of his income to use in calculating projected disposable income. There is no basis in this case to conclude that the debtor's disposable income is virtually certain to be higher (or lower) in the future than in 2016. By using his most recent information regarding his income to calculate his plan payment, the debtor has complied with § 1325(b) and *Lanning*.

D.      Support Agreement

Finally, the trustee objects to the debtor's agreement to pay half of his tax "refund" to the mother of his grandson. The trustee demanded an evidentiary hearing on this issue. At the hearing, however, the debtor presented evidence of the agreement and the reasonableness of the payment to cover the child's expenses during the summer. As noted earlier, his testimony was credible. The trustee offered no evidence of her own.[3] Based on the factual findings above, the

---

[3] At the evidentiary hearing, the trustee pointed out that the debtor did not disclose in Line 18 of Schedule J the money paid to his grandson's mother as a "support" not deducted from his pay. The debtor could have reported the full amount of his income tax "refund" – $2,400 – by prorating that amount and including $200 in additional income in Schedule I. He could have then prorated the $1,200 he pays to the mother of his grandson and included $100 as a support expense in Line 18 of Schedule J. But this would have resulted in the same plan payment that the debtor proposed in his plan. So the debtor's failure to list the payment to her as "support" in Schedule J makes no difference: the plan payment required under § 1325(b) remains the same.

trustee's argument is rejected.

      E.      <u>Effect of Trustee's Objections</u>

Trustee Marshall has a practice of insisting that certain debtors (those proposing to pay unsecured creditors less than 100% of what they are owed) turn over all tax refunds received after confirmation without deducting any expenses from them. Even debtors whose "refunds" constitute tax credits the government offers to low-income workers are treated this way. Yet she has no similar practice for debtors who do not receive tax refunds or credits but instead receive all of their annual income through wages.[4] The effect of her practice, whether intended or not, is that debtors with the same annual income are treated differently depending solely on when they receive the income.

Section 1325(b)(2) in no way authorizes this sort of discrimination. All debtors are entitled to deduct reasonably necessary expenses from all the income they receive, whether they receive that income regularly as wages or only once a year in the form of tax refunds or tax credits.[5]

---

[4] A debtor with higher monthly wages but the same annual income may also be able to eliminate any tax refund – and avoid paying additional income to the trustee – by adjusting his withholding after confirmation. Debtors who receive a large proportion of their income through tax credits do not have this option.

[5] Trustee Marshall's practice, which no other chapter 13 trustee in this district follows, has a real negative impact on those debtors least able to protect themselves. *Pro se* debtors are most likely to have the lowest income and so receive tax credits like the earned income credit. Because they are *pro se*, they are far less likely to challenge the trustee's practice. Unaware that the trustee's practice is wrong as a matter of law, they will simply accede to her demands about how their plans should be structured.

V.   Conclusion

The trustee's objection to confirmation of the debtor's plan is overruled. The plan will be confirmed.

Dated: March 13, 2017

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge